**No. 22-16149**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

WILLIAM MCMEIN EHART, Jr., Individually and as Personal Representative of the Estate of Maureen Anne Ehart, Deceased,

*Plaintiff-Appellee*,

v.

LAHAINA DIVERS INC. and CORY DAM,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Hawaii
No. 21-cv-00475 SOM-KJM
Hon. Susan Oki Mollway

---

**APPELLANTS' REPLY BRIEF**

---

Ralph J. O'Neill, Esq.
Jamie C.S. Madriaga, Esq.
Matthew A. Hemme, Esq.
MacDonald Rudy O'Neill & Yamauchi, LLP
1001 Bishop Street, Suite 2800
Telephone: (808) 523-3080
*ralphoneill@macdonaldrudy.com*
*jmadriaga@macdonaldrudy.com*
*matthemme@macdonaldrudy.com*

*Attorneys for Appellants*
LAHAINA DIVERS, INC. and
CORY DAM

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

I.     RESPONSE TO APPELLEE'S STATEMENT OF THE ISSUES ............. 1

II.    APPELLEE IMPROPERLY BYPASSES STATUTORY
INTERPRETATION OF § 30509 AND SKIPS DIRECTLY TO A
LEGISLATIVE HISTORY ANALYSIS ...................................................... 3

III.   MOLOKINI IS NOT A PORT .................................................................. 3

IV.  APPELLEE RELIES ON FLAWED ARGUMENTS REGARDING
LEGISLATIVE HISTORY AND CONGRESSIONAL INTENT .............. 5

     A.    The Answering and Amicus Briefs Mischaracterize Congress'
Consideration of the GENERAL SLOCUM When Enacting 183c ...... 5

     B.    Appellee Cannot Expand the Reach of 30509 by Ignoring Language in
§ 30502 and the Limitation Act ......................................................... 7

     C.    The Right to Invoke Limitation Under the Limitation Act Has No
Discernible Connection to the Application of § 30509 ...................... 8

     D.    In 1996 Congress Expressed its Intent that § 30509 Applies to
Common Carriers ............................................................................... 9

V.    THE ANSWERING BRIEF RELIES ON *ROYAL CARIBBEAN CRUISES*,
WHICH SUPPORTS APPELLANTS' POSITION ................................... 10

VI.  THE ANSWERING BRIEF MISSTATES OR MISCHARACTERIZES
APPELLANTS' ARGUMENTS IN ADDITION TO IGNORING
RELEVANT KEY POINTS ........................................................................13

     A.    Appellee Inaccurately Contends that the Opening Brief's Cases
Discussing Public Policy in Recreational Maritime Cases Do Not
Consider or Mention § 30509 or § 183c ............................................13

         1.    The Answering Brief Miscites the Jerome and Witkowski
Opinions Cited in the Opening Brief .........................................13

2. The Answering Brief Incorrectly States that the Morgan and Charnis Cases Cited by Appellants Do Not Cite or Consider 46 U.S.C. § 183c ......................................................................15

3. The Cited Opinions' Lack of Reference to § 30509 or § 183c Does Not Change the General Rule that Maritime Exculpatory Clauses for Recreational Marine Activities Are Enforceable....17

B. The Answering Brief Mischaracterizes the Opening Brief's Characterization of the *Rodriguez* Decision While Glossing Over the Case's Relevant Points ......................................................................20

VII. DISAGREEMENT WITH LONGSTANDING PERSUASIVE PRECEDENT DOES NOT CHANGE THE MAJORITY VIEW—THAT EXCULPATORY CLAUSES WAIVING NEGLIGENCE FOR RECREATIONAL MARITIME ACTIVITIES ARE ENFORCEABLE....22

VIII. HAWAI'I'S RECREATIONAL ACTIVITY LIABILITY STATUTE CANNOT APPLY BECAUSE HRS 663-1.54 CONFLICTS WITH MARITIME LAW ......................................................................24

A. Unlike Maritime Law, HRS § 663-1.54 Will Not Waive Liability for Ordinary Negligence......................................................................25

B. Appellee Argued that Assumption of Risk Does Not Apply to a Maritime Case and Cannot Concurrently Rely on HRS 663-1.54, Which Permits Assumption of Risk ......................................................................26

CONCLUSION ......................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Rodriguez v. SeaBreeze Jetlev LLC*, 4:20-CV-07073-YGR,
    2022 WL 3639305 (N.D. Cal. June 23, 2022) ................................... 20, 22, 24, 26

*Brodheim v. Cry*,
    584 F.3d 1262 (9th Cir. 2009) ................................................................ 2

*Brozyna v. Niagara Gorge Jetboating, Ltd.*,
    2011 WL 4553100 (W.D.N.Y. 2011) ............................................. 18, 26

*Charnis v. Watersport Pro, LLC*,
    2009 A.M.C. 1299, 2009 WL 2581699 (D. Nev. May 1, 2009) .......... 16, 17, 18, 23

*Cobb v. Aramark Sports and Entertainment Services, LLC*,
    933 F.Supp.2d 1295 (D.Nev. 2013) ............................................... 19, 20

*Cutchin v. Habitat Curacao-Maduro Dive Fanta-Seas, Inc.*,
    No. 98-1679-CIV-GOLD, 1999 WL 33232277 ................................... 18

*CVS Health Corp. v. Vividus, LLC*,
    878 F.3d 703 (9th Cir. 2017)................................................................ 2

*In re Aramark Sports & Ent. Servs., LLC*,
    No. 2:09-CV-637-TC, 2012 WL 3776859 (D. Utah Aug. 29, 2012) ................... 19

*In re Exxon Valdez*,
    484 F.3d 1098 (9th Cir. 2007) ............................................................ 24

*In re Royal Caribbean Cruises Ltd.*,
    991 F. Supp. 2d 1171 (S.D. Fla. 2013)................................................ 1, 3

*Jerome v. Water Sports Adventure Rentals & Equip., Inc.*,
    No. 2009-092, 2013 WL 1499046 (D.V.I. Apr. 12, 2013)................................ 8, 13

*Johnson v. Royal Caribbean Cruises, Ltd.*,
    449 F. App'x 846 (11th Cir. 2011) ...................................... 10, 11, 12, 13

*Nicole Morgan v. Water Toy Shop, Inc.*,
    2018 WL 1725550 .............................................................................. 16

*Olivelli v. Sappo Corp.*,
    225 F. Supp. 2d 109 (D.P.R. 2002) .................................................. 18, 19

*Olmo v. Atlantic City Parasail, LLC*,
    2016 WL 1728964 (D.N.J. 2016) ........................................................ 20

*Royal Ins. Co. of Am. v. S.W. Marine*,
    194 F.3d 1009 (9th Cir.1999) ........................................................... 19

*Shultz v. Fl. Keys Dive Ctr., Inc.*,
    224 F.3d 1269 (11th Cir.2000) ..........................................................15

*United States v. Lillard*,
    935 F.3d 827 (9th Cir. 2019) ............................................................. 3

*Waggoner v. Nags Head Water Sports, Inc.*,
    141 F.3d 1162 (4th Cir. 1998) .......................................................... 18

*Witkowski v. Niagara Jet Adventures, LLC*,
    2020 WL 486876 (W.D.N.Y., 2020) ............................... 13, 14, 15, 26

## State Cases

*Cook v. Crazy Boat of Key West, Inc.*,
    949 So.2d 1202 (Fla.3d DCA 2007) ...................................................11

*Foronda v. Hawaiʻi International Boxing Club*,
    96 Hawaiʻi 51, 25 P.3d 826 (App. 2001) ........................................... 26

*Yoneda v. Tom*,
    110 Hawaiʻi 367, 133 P.3d 796 (2006) .............................................. 26

## Federal Statutes

1 U.S.C. § 3 ........................................................................................... 7

46 U.S.C. § 183(a) ............................................................................... 16

46 U.S.C. § 183(c) ............................................................................... 16

46 U.S.C. § 183c ........................................................................ 1, 15, 18

46 U.S.C. § 30505 ................................................................................. 8

46 U.S.C. § 30509 ........................................................................ passim

Pub.L. 102-587 ................................................................................... 10

Pub.L. 103-206 ................................................................................... 10

Pub.L. 104-324 ................................................................................... 10

Pub.L. 109–304, 120 Stat 1485 .......................................................... 10

Section 30509(a)(1) ................................................................. 9, 10, 15

Section 30509(b) ..................................................................... 9, 14, 15

Sections 30506(a), 30508(a), 30508(b), and 30509(a)(1) ..................... 7

Sections 30508(b) and 30509(a)(1) .................................................. 7

§ 183c(a) ................................................................................... 18

**State Statutes**

Haw. Rev. Stat. § 663-1.54(a) ................................................... 25, 27

Haw. Rev. Stat. § 663-1.54(c)(3) ...................................................... 27

Section 663-1.54, *Hawaii Revised Statutes* .......................... passim

Haw. Rev. Stat. § 663-1.54(b) ................................................ 2, 25, 27

## INTRODUCTION

Defendant-Appellants Lahaina Divers, Inc. and Cory Dam (collectively, "**Appellants**") respectfully request that the Court vacate the Order[1] because Appellee's[2] Answering Brief (Dkt. 30) and the Amicus Brief:[3] (1) ignore the statutory constructions and expand 46 U.S.C. § 30509 (formerly 46 U.S.C. § 183c); (2) rely on flawed legislative history and congressional intent; (3) misstate or mischaracterize *In re Royal Caribbean Cruises Ltd.*, 991 F. Supp. 2d 1171 (S.D. Fla. 2013) relied on by Appellee, as well as Appellants' arguments in the Opening Brief (Dkt. 30); and (4) disagree with 19 opinions cited by Appellants in favor of three nonbinding district court decisions from the United States District Court for the District of Hawai'i.

## I.  RESPONSE TO APPELLEE'S STATEMENT OF THE ISSUES

Appellee contends that the chief issue is whether Congress intended § 30509 to apply to vessels transporting passengers to and from recreational excursions.

---

[1] "Order" refers to the Order Denying Motion to Dismiss; Order Granting Motion to Strike Affirmative Defenses Asserting Waiver/Release and Assumption of the Risk (the "Order") (1-ER-14-51)

[2] "Appellee" refers to Plaintiff-Appellee William McMein Ehart, Jr.

[3] "Amicus Brief" refers to the Brief of Injured Vessel Passengers and Surviving Family Members and Personal Representatives of Fatally Injured Vessel Passengers as Amici Curiae in Support of Plaintiff-Appellee William McMein Ehart, Jr., and Urging Affirmance (Dkt. 33)

(Dkt. 30 at 18.) Appellant has two concerns concerning this characterization.

First, statutory interpretation does not start with analysis of intent. Instead, the Court concentrates on the text to determine a statute's meaning. *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017) ("If the language has a plain meaning or is unambiguous, the statutory interpretation inquiry ends there.") (citation omitted).

Second, the textual issue is whether the § 30509 triggering language, a vessel "transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country," a recreational vessel that (a) traveled from and back to the same port, and (b) has the main purpose of assisting voluntary scuba and snorkeling excursions.

Appellee urges as the second issue that the Court determine whether the provisions of Hawaii law, Section 663-1.54, *Hawaii Revised Statutes* ("HRS"), conflict with maritime law. (Dkt. 30, at 19). The issue is not subject to review on appeal because the District Court held that issues of fact precluded it from ruling on this question. (1-ER-49 ("However, there remains on the present record a question of fact about whether section 663-1.54(b)'s conditions were satisfied ….") Appellee has not cross-appealed the District Court's denial of summary judgment on this issue. *Brodheim v. Cry*, 584 F.3d 1262, 1274 (9th Cir. 2009).

## II. APPELLEE IMPROPERLY BYPASSES STATUTORY INTERPRETATION OF § 30509 AND SKIPS DIRECTLY TO A LEGISLATIVE HISTORY ANALYSIS

The Opening Brief argues at length that § 30509 is unambiguous based on a plain reading of the statute. (*See* Dkt. 10 at 33-40.) Absent an ambiguity, courts should not turn to legislative intent. *United States v. Lillard*, 935 F.3d 827, 833–34 (9th Cir. 2019). But the Answering Brief does not address Appellants' statutory analysis or explain how § 30509 is ambiguous. Instead, Appellee skips straight to his analysis of Congress' intent based on his mistaken belief that application of the statute as written would lead to absurd results.

But Appellee's reasoning for reaching the legislative history is not even supported by the "better reasoned" *In re Royal Caribbean Cruises Ltd., 991 F. Supp. 2d 1171 (S.D. Fla. 2013)* on which he relies. (*See* Section V, *infra*). That case not only found § 30509 unambiguous and rejected policy rationales, it also concluded that a "problem of statutory drafting…is for the legislature, not [the] Court." *Id.* at 1176, 1180.

## III. MOLOKINI IS NOT A PORT

Appellee claims that Molokini Crater ("**Molokini**") qualifies as a port under § 30509, but the factual assertions are not supported by citations to the record. (Dkt. 30, at 36, 54.) The District Court characterized Molokini as a "crescent-

shaped volcanic atoll" but did not reach the issue of whether Molokini qualified as a port, and Appellee provides no basis for describing Molokini as a "protected anchorage." (1-ER-38.) And Appellee provide a basis for describing Molokini as a "protected anchorage." (*See* 1-ER-14, 18.) First and most obvious, vessels moor at the crater, so long as they have a State of Hawai'i permit. No vessel is dropping anchor. Second, the District Court described Molokini as both an "atoll" and an "an unpopulated partially submerged volcanic crater located approximately 2.5 miles off Maui." (1-ER-1-3.) There exists a similar lack of record support for Appellee's contention the trip was "inter-island." (Dkt. 30, at 43.) Appellee asks this Court to take judicial notice of disputed facts.

In addition, based on the ordinary usage of the word, Molokini is not a recognized "port."[4]

---

[4] *Port Hawai'i Commercial Harbors System Handbook*, DEPARTMENT OF TRANSPORTATION, *available at* https://hidot.hawaii.gov/harbors/library/port-hawaii-handbook (last visited Nov. 30, 2022); WORLD PORT SOURCE, http://www.worldportsource.com/ports/index/USA_HI.php (last visited Nov. 30, 2022); *HOMEPORT Sector Honolulu*, UNITED STATES COAST GUARD https://homeport.uscg.mil/port-directory/honolulu (last visited Nov. 30, 2022).

## IV. APPELLEE RELIES ON FLAWED ARGUMENTS REGARDING LEGISLATIVE HISTORY AND CONGRESSIONAL INTENT

### A. The Answering and Amicus Briefs Mischaracterize Congress' Consideration of the GENERAL SLOCUM When Enacting 183c

Both the Answering Brief (*see* Dkt. 30 at 26, 29, 55-6, 60) and its supporting *Amicus Curiae* brief (*see* Dkt. 33 at 19-21) espouse the unsupported position that the GENERAL SLOCUM disaster of 1904 was either an inciting incident to the enactment of Section 183c or a major consideration of Congress while passing the law in 1936. While no one disputes the magnitude of that tragedy, Appellee and *amici* afford it far more time and attention than did Congress when passing Section 183c.

First, if the GENERAL SLOCUM were "a principal motivation for Congress in enacting what is now 46 U.S.C. § 30509" (Dkt. 33 at 19), Congress likely would not have waited 32 years to pass the law. Second, the only evidence in the record that Congress contemplated the GENERAL SLOCUM in 1936 appears in *Safety of Life and Property at Sea*: Hearings Before the Committee on Merchant Marine and Fisheries, House of Representatives, Seventy-fourth Congress, Second Session, on H.R. 9969 (Feb. 19, 20, 21, 1936) ("1936 Hearings").[5] The 1936

---

[5] *See* 2-ER-121-54, which consists of relevant excerpts from the 1936 Hearings.

Hearings are 199 pages in total[6] and the disaster is referenced only twice. (2-ER-128-9; 2-ER-136-7). The first relates to whether the proposed bill amending the Liability Act would consider vessels operating on inland waterways like the East River to be "sea going vessels." The latter relates an inquiry about whether the GENERAL SLOCUM would have been considered a "border-line" unsafe vessel by the Department of Commerce. Neither involves liability waivers or the application of what would become Section 183c.

Finally, the GENERAL SLOCUM is an issue in this case only to the extent the Order incorrectly concluded that these two references to the disaster meant that Congress was considering "vessels taking passengers on day trips to and from the same port" when it drafted Section 183c. (1-ER-43). The record below and before this Court establishes that the GENERAL SLOCUM was a vessel transporting passengers from one port to a different port, not to and from the same port. In other words, the Order's conclusion was contrary to the facts. Other than to correct the Order's plain error on this single point, the GENERAL SLOCUM is irrelevant to the issues on appeal.

---

[6] The entirety of the 1936 Hearings were filed in the District Court at Dkt. No. 66-2 on July 1, 2022.

**B.** **Appellee Cannot Expand the Reach of 30509 by Ignoring Language in § 30502 and the Limitation Act**

Appellee wrongly states that the entirety of Section 30501 *et seq.*, save for Section 30503 (*see* Dkt. 30 at 52), applies to all vessels as defined in 1 U.S.C. § 3. (*See* Dkt. 30 at 48-49). Appellee's argument disregards Section 30502's first four words: "Except as otherwise provided." Several points highlight the deficiencies in Appellee's position.

First, all provisions in this Chapter, other than Sections 30506(a), 30508(a), 30508(b), and 30509(a)(1), that refer to the word "vessel" do so without any qualification or description.

Second, Sections 30506(a) and 30508(a) use identical language limiting their respective applications to fewer than all the vessels specified in Section 30502.

Finally, Sections 30508(b) and 30509(a)(1) have "otherwise provided" that they apply to only a limited subset of the vessels identified in Section 30502: those engaged in transportation "between ports in the United States, or between a port in the United States and a port in a foreign country." The question of whether such text means that these sections apply to fewer than all vessels to which Section 30502 refers is one way to describe the fundamental issue on appeal.

### C. The Right to Invoke Limitation Under the Limitation Act Has No Discernible Connection to the Application of § 30509

Because Appellants have plead entitlement to the benefits of the Limitation Act as an affirmative defense while asserting § 30509 is inapplicable to the Liability Waivers in this case, Appellee accuses Appellants of "gluttony" and "trying to have [our] cake and eat it too." However, the ability of "***the owner of a vessel***" to invoke the Limitation Act is not contingent on the applicability of § 30509, which applies to the "owner…of a ***vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country***…."[7] *Jerome v. Water Sports Adventure Rentals & Equip., Inc.*, No. 2009-092, 2013 WL 1499046, at *7 (D.V.I. Apr. 12, 2013)(holding § 30509 does not prohibit contractual waiver or release of liability and that there is no "discernible connection between [§ 30509] provisions and [the] ability to invoke the Limitation Act."). Thus, even if the Limitation Act is a "controversial relic" as Appellee contends, § 30505 has no discernible connection to the application of § 30509 to the Liability Waivers.

---

[7] *Compare* 46 U.S.C. § 30505 *to* 46 U.S.C. § 30509.

### D.   In 1996 Congress Expressed its Intent that § 30509 Applies to Common Carriers

Appellee has argued at length, both below and in his Answering Brief, that Congress did not intend Section 30509(a)(1)—former Section 183c—to apply to common carriers, like steamships of the early-20th century or cruise ships today, despite using language that plainly describes such vessels. He points to dubious policy arguments and fanciful hypotheticals to say that Congress could not have meant what it wrote in 1936 when it enacted Section 183c. But with the passage of the Coast Guard Authorization Act of 1996 (Oct. 19, 1996, Pub.L. 104-324, Title XI, § 1129(b), 110 Stat. 3984.), Congress erased any doubt that Section 183c applies to common carriers.

Section 1129 of the Coast Guard Authorization Act is titled "Cruise Ship Liability" and, among other things, amended Section 183c to add what is now codified as Section 30509(b). (*See* Statutory Supplement). This section's title cannot be squared with Appellee and the Order's contention that Congress actually meant for Section 183c to apply to every vessel carrying a passenger provided the vessel has a connection to a United States port. If that were the case, Congress would have chosen a more appropriate title, such as "Passenger Vessel Liability."

Congress enacted Section 30509 in 1936. It has since amended the law three

times in 1992, 1993, and 1996[8] and recodified it once in 2006.[9] In more than 86 years, Congress has never changed the language of Section 30509(a)(1), which supports the proposition that Congress intended the provision to apply to common carriers. Appellants respectfully submits that this Court should take Congress at its word and enforce Section 30509 as it is written, not as Appellee wishes it were written.

## V. THE ANSWERING BRIEF RELIES ON *ROYAL CARIBBEAN CRUISES*, WHICH SUPPORTS APPELLANTS' POSITION

The Answering Brief relies on *Royal Caribbean Cruises* as a "better-reasoned" decision that holds § 30509 "'contains no exceptions regarding the type of activity – whether recreational, ultra-hazardous, or otherwise – in which the passenger is partaking.'" (Dkt. 30 at 44). However, much like the Order's characterization of § 30502, which leaves out key conditional language, Appellee's quote leaves out relevant context. In line with the Eleventh Circuit's decision in *Johnson v. Royal Caribbean Cruises, Ltd.,* 449 F. App'x 846 (11th Cir. 2011), *Royal Caribbean* applied § 30509 because *Royal* was 'the owner ... of a vessel transporting

---

[8] *See* Nov. 4, 1992, Pub.L. 102-587, Title III, § 3006, 106 Stat. 5068; Dec. 20, 1993, Pub.L. 103-206, Title III, § 309, 107 Stat. 2425; Oct. 19, 1996, Pub.L. 104-324, Title XI, § 1129(b), 110 Stat. 3984.)

[9] *See* October 6, 2006, Pub.L. 109–304, 120 Stat 1485.

passengers between … a port in the United States and a port in a foreign country."
(Dkt. 10 at 48).

*Royal* attempted to argue that § 30509 did not apply to a jet-ski tour offered by *Royal* because § 30509 "applies only when a common carrier is performing actual responsibilities of a common carrier like transporting passengers from place to place." *Id.* at 1178. However, the district court reiterated that § 30509 contains no language exempting the owner of a common carrier just because the activity did not involve common carrier responsibilities. *Id. Royal Caribbean*, therefore, does not advance Appellee's broad application of § 30509 since the <u>DAUNTLESS</u> did not transport passengers to or from at least one port in the United States within the meaning of § 30509.

In fact, *Royal Caribbean* does more to advance Appellants' arguments since the decision (1) indicates that leaving from and returning to the same port fails to trigger § 30509;[10] (2) distinguishes an owner of "a vessel satisfying the

---

[10] *Id.* at 1180 ("[I]magine if in addition to owning cruise liners, Royal also owned a very small boat from which it ***ran fishing tours that took and returned tourists to the same port*** that no cruise ships went near. Under the statute's plain language, § 30509 would void a limiting-liability provision in the fishing-tour-ticket contract just because Royal also owned cruise liners, even though the two operations had nothing to do with each other. But that problem of statutory drafting—evident only in an extremely unlikely hypothetical—is for the legislature, not this Court.") (emphasis added). *See also id.* at 1181 *Cook v. Crazy Boat of Key West, Inc.*, 949 So.2d 1202, 1203 (Fla.3d DCA 2007) (§ 183c did not applicable

transporting-passengers-between-ports condition of [§ 30509]" from owners that "own only vessels that do not transport passengers between ports" like the DAUNTLESS;[11] (3) applies § 30509 to common carriers and cruise ships.[12] (4) supports Appellants' arguments that § 30509 does not apply to the DAUNTLESS because the vessel is not a common carrier with a recreational component.[13] (Dkt.10 at 51–52).

Ironically, *Royal Caribbean* debunks Appellee's hypothetical involving a deep-sea sport fishing vessel where he alleges Appellants' interpretation requiring different ports would result in an unequal application of § 30509 that Congress could not have intended. (Dkt. 30 at 56 n.48). *Royal Caribbean* would not apply § 30509 to the vessel at all because the hypothetical (1) does not indicate that a common carrier owns the deep-sea sport fishing vessel; and (2) the deep-sea sport fishing vessel does not transport passengers between ports within the meaning of § 30509. In addition, the argument regarding Congress's intent fails because *Royal*

---

because vessel "did not travel between ports of the United States but rather left from and returned to the same port").

[11] *Id.* at 1181 ("Royal, unlike the owners in *Waggoner* and *Cook,* indisputably does own a vessel satisfying the transporting-passengers-between-ports condition of the statute."). The Opening Brief cited both *Waggoner* (jet skis) and *Cook* (thrill ride) to support Appellants' contention that § 30509 does not apply to a dive vessel.

[12] *See id.* at 1178, 1180.

[13] *Id.* at 1181.

*Caribbean* not only found § 30509 unambiguous and rejected policy rationales,

*Royal Caribbean* also stated that a "problem of statutory drafting…is for the

legislature, not [the] Court." *Id.* at 1176, 1180.

## VI. THE ANSWERING BRIEF MISSTATES OR MISCHARACTERIZES APPELLANTS' ARGUMENTS IN ADDITION TO IGNORING RELEVANT KEY POINTS

### A. Appellee Inaccurately Contends that the Opening Brief's Cases Discussing Public Policy in Recreational Maritime Cases Do Not Consider or Mention § 30509 or § 183c

The Answering Brief contends that "[n]ot one of the decisions on which the

Opening Brief relies for the proposition that 'exculpatory clauses waiving liability

for negligence in maritime recreational activities are consistent with public policy'

cites, applies, considers, or even mentions § 183c or § 30509." (Dkt. 30 at 41, 42

n.63, n.64). A literal translation of this argument could be accurate in the sense that

"not one of the decisions considers the proposition" since ***all of the cases***

***referenced by Appellee*** considered § 183c or § 30509 or cited cases that considered

§ 183c or § 30509.

#### 1. The Answering Brief Miscites the Jerome and Witkowski Opinions Cited in the Opening Brief

Appellee miscites the opinions for *Jerome v. Water Sports Adventure Rentals*

*& Equip., Inc.*, No. 2009-092, 2013 WL 1499046 (D.V.I. Apr. 12, 2013) and

*Witkowski v. Niagara Jet Adventures, LLC*, 2020 WL 486876, at *4–5 (W.D.N.Y.,

2020), which explains why the Answering Brief erroneously states that neither decision examined § 183c or § 30509.[14] (Dkt. 30 at 41, 42 n.63, n.64).

In the April 12, 2013 *Jerome* opinion, the plaintiff cited to the *Courtney* case from the District of Hawaiʻi to support an argument regarding § 30508, but the *Jerome* court noted that *Courtney* (*In re Pacific Adventures*) dealt with the prohibition against liability releases provided by 46 U.S.C.App. § 183c, which is now found in 46 U.S.C. § 30509." *Id.* at *7. The *Jerome* court held that "[w]hile § 30509 prevents an owner from limiting its liability under certain circumstances, it d[id] not apply" because the jet ski at issue was not a "'vessel transporting passengers between ports in the United States, or between a port in

---

[14] The Answering Brief cites *Jerome v. Water Sports Adventure Rentals & Equip., Inc.*, 2013 U.S. Dist. LEXIS 27286 at *16-28 (D.V.I. 2013), but this opinion refers to a February 26, 2013 opinion, not the April 12, 2013 opinion cited by the Opening Brief. The Answering Brief also cites *Witkowski v. Niagara Jet* Adventures*, LLC*, 2018 U.S. Dist. LEXIS 85080 at *8-9 (E.D.N.Y. 2018), but the Opening Brief cited a 2020 opinion, not the 2018 opinion referred to by Appellee. The Opening Brief provided the correct citations and explained how *Jerome* and *Witkowski* analyzed and determined that § 30509 did not apply to recreational vessel tours. (Dkt. 10, at 55, 56). Despite Appellants' express references to § 30509, Appellee's counsel appears to have recycled the argument that the cases do not mention § 30509 since the same argument appeared in a memorandum in opposition filed in the *Rodriguez* case. *See Rodriguez v. Seabreeze Jetlev LLC, et al.*, No. 4:20-cv-07073-YGR, at Doc. No. 111, at Page 15, 16 n.2.

the United States and a port in a foreign country' as required by § 30509(a)(1)."[15]

*Id.*

The 2020 *Witkowski* opinion, in addition to finding the exculpatory clause did not violate public policy, examined § 30509 and characterized the plaintiffs' argument that § 30509 prohibited a release for a jet boat excursion as "miss[ing] the mark." *Id.* at *4–5. The *Witkowski* court stated: "It is undisputed that the plaintiffs' voyage on Niagara Jet's vessel departed and returned from the same port. By its terms, therefore, section 30509 does not apply to prohibit Niagara Jet's use of the release to limit its liability." *Id.* at *4.

> ### 2. The Answering Brief Incorrectly States that the *Morgan* and *Charnis* Cases Cited by Appellants Do Not Cite or Consider 46 U.S.C. § 183c

The Answering Brief incorrectly states that *Morgan* and *Charnis* do not mention § 183c or consider whether the statute bars an exculpatory contract. (Dkt. 30, at 42 n. 63, n.64).

---

[15] *Jerome* cites to *Oran* for the proposition "that § 30509 did not apply where the plaintiff was injured during a sailing class aboard the *Hound Dog* for recreational purposes and 'not to obtain transport from one location to another.'" *Id. Jerome* additionally cites to *Shultz v. Fl. Keys Dive Ctr., Inc.,* 224 F.3d 1269, 1271 (11th Cir.2000), which "conclud[ed] that § 183c did not invalidate a release of liability pertaining to injuries sustained while scuba diving, and not[ed] that a dive boat was not a vessel transporting passengers between ports under § 183c where it departed from one port, brought divers to the location of the dive, and returned them to the original port." *Id.*

*Morgan v. Water Toy Shop* not only cites to § 183(c) but holds that the statute applies to common carriers as opposed to the jet skis in the case that were used for "a recreational, hazardous maritime activity." *Nicole Morgan v. Water Toy Shop, Inc.*, 2018 WL 1725550, at 8–10 ("[E]xculpatory clauses waiving liability for negligence in maritime recreational activities are consistent with public policy."). Footnote 23 of *Morgan* noted that § 183c "applies only to common carriers" when it asserted that, "Congress could block the enforceability of these waivers like it did in 46 U.S.C. § 183(c), which prohibits a vessel owner from limiting its liability for its own negligence when carrying passengers between ports of the United States or from a port of the United States to a foreign port." *Id.* at *9 n.23.

*Charnis v. Watersport Pro, LLC* discusses the statute; the case mistakenly cites to 46 U.S.C. § 183(a) but quotes the language of § 183(c). *Charnis v. Watersport Pro, LLC*, 2009 A.M.C. 1299, 2009 WL 2581699, at *4 (D. Nev. May 1, 2009). The *Charnis* court recognized that the statute disallows the use of liability waivers, but stated that "on its terms[,] it is limited solely to 'vessel[s] transporting passengers between ports.'" *Id.* "Accordingly, federal courts applying maritime law hold that the prohibition on liability waivers applies only to common carriers and that owners of recreational vessels may enforce such waivers." *Id.*

### 3. The Cited Opinions' Lack of Reference to § 30509 or § 183c Does Not Change the General Rule that Maritime Exculpatory Clauses for Recreational Marine Activities Are Enforceable

The omission of § 30509 and § 183c from an opinion does not change the general rule communicated in the decisions raised by Appellants—that exculpatory clauses are enforceable in the context of recreational marine activities. A logical reason for omitting any reference to § 30509 or § 183c could be that most counsel recognize that they should not argue the applicability of the statutes given the multiple decisions that have held that neither § 30509 nor § 183c bars exculpatory clauses waiving ordinary negligence related to recreational maritime activities. Indeed, a district court in **2009** had already observed that federal admiralty law at the time "sufficiently address[ed] the enforceability of liability waivers." *Charnis*, 2009 WL 2581699 at *4.

However, as discussed in the Opening Brief, the remaining cases referenced in the Answering Brief that purportedly did not consider § 30509 or § 183c not only

held exculpatory clauses enforceable under maritime law but also cited *Waggoner*,[16] *Cutchin*,[17] or *Olivelli*,[18] which had analyzed § 30509 or § 183c.

Although *Brozyna v. Niagara Gorge Jetboating, Ltd.*, 2011 WL 4553100 (W.D.N.Y. 2011) did not discuss § 183(c), the decision referenced *Waggoner*, *Cutchin*, *Olivelli*, and *Charnis*, which all considered § 183(c). *Id.* at *4. In addition, the court still observed Appellants' main point—that "[t]here is a substantial body of general maritime law dealing with the enforceability of the type of liability waiver executed by plaintiffs in this case," and "the clear majority of federal cases to consider the issue holds that operators of inherently risky marine recreational activities may contract to disclaim liability for their own negligence." *Id.*

---

[16] *Waggoner v. Nags Head Water Sports, Inc.*, 141 F.3d 1162 (4th Cir. 1998) (unpublished) held that § 183c(a)was "limited by its terms to common carriers," which "reflects the principle that it is against public policy for a common carrier to attempt to limit its liability for its own negligence." *Id.* at *5.

[17] *Cutchin v. Habitat Curacao-Maduro Dive Fanta-Seas, Inc.*, No. 98-1679-CIV-GOLD, 1999 WL 33232277 cited *Waggoner* and held that a liability release was not inconsistent with public policy since "courts ha[d] interpreted [46 U.S.C. § 183c] to apply only to common carriers." *Id.* at *3.

[18] *Olivelli v. Sappo Corp.*, 225 F. Supp. 2d 109, 119 (D.P.R. 2002) discussed the Eleventh Circuit's decision in *Shultz* and cited *Waggoner*, which held "(1) the dive boat was not a vessel transporting passengers between ports of the United States, and (2) the vessel could not be categorized as a common carrier to which section 183c applied." *Id.* at 119.

The case *In re Aramark Sports & Ent. Servs., LLC*, No. 2:09-CV-637-TC, 2012 WL 3776859 (D. Utah Aug. 29, 2012) cited *Olivelli* and *Charnis*. *Id.* at *4, 5 n.6. Although the case does not discuss § 183(c), the district court still agreed that there is "nothing inherently unfair in the use of waivers in recreational sporting events such as scuba diving." *Id.* at n.6 (citing *Olivelli,* 225 F.Supp.2d at 119). The district court also agreed with the "majority rule" adopted by the First, Fifth, Eighth, and Ninth Circuits[19] "that maritime exculpatory clauses are enforceable when a party clearly absolves itself from liability for its own negligence." *Id.* at *6 ("[A]n exculpatory clause limited to barring liability for ordinary negligence would be valid, assuming it were not inflicted by a monopolist or one with greatly superior bargaining power.").

*Cobb v. Aramark Sports and Entertainment Services, LLC*, 933 F.Supp.2d 1295, 1299 (D.Nev. 2013) did not discuss § 183(c); however, *Cobb* relied on *Charnis* and similarly held that "[u]nder federal admiralty law, owners of recreational

---

[19] The district court opinion mentioned *Royal Ins. Co. of Am. v. S.W. Marine*, 194 F.3d 1009, 1014 (9th Cir.1999), which found an exculpatory clause in a maritime repair contract enforceable even though it absolved parties from liability for negligence. *Id.* ("The Ninth Circuit has weighed the policy considerations and concluded that, except in towing contracts, exculpatory clauses are enforceable even when they completely absolve parties from liability for negligence.") (internal citation omitted).

vessels may, through written waivers, disclaim liability for their own negligence."

*Id.* at 1298

*Olmo v. Atlantic City Parasail, LLC*, 2016 WL 1728964, at *8 (D.N.J. 2016), which granted a summary judgment enforcing a parasailing liability waiver cited *Olivelli*, *Charnis*, and *Cobb* in determining that an express waiver for a "voluntary recreational activity" did not contravene federal public policy. *Olmo v. Atlantic City Parasail, LLC*, 2016 WL 1728964, at *9–11 (D.N.J., 2016) ("The *Olivelli*, *Charnis*, and *Cobb* courts all found that liability waivers for voluntary recreational activities are not adhesive contracts.").

### B. The Answering Brief Mischaracterizes the Opening Brief's Characterization of the *Rodriguez* Decision While Glossing Over the Case's Relevant Points

The Answering Brief mischaracterizes Appellants' reliance on *Rodriguez v. SeaBreeze Jetlev LLC*, 4:20-CV-07073-YGR, 2022 WL 3639305 (N.D. Cal. June 23, 2022) but ignores relevant points in *Rodriguez* based on the misstated conclusion that § 30509 "contains no exceptions regarding the type of activity – whether recreational, ultra-hazardous, or otherwise – in which the passenger is partaking." *See supra* § V.

First, the Answering Brief implies that Appellants relied on *Rodriguez* to demonstrate that § 30509 applies to common carriers.[20] As a point of clarification, the Opening Brief acknowledged that *Rodriguez* "did not reach the question of whether the statute applies only to common carriers." (Dkt. 10, at 47 of 76).

Second, the Answering Brief focuses on dicta in *Rodriguez* that agreed with the Order's holding that Congress could have used the phrase "between different" ports in § 30509,[21] but the Answering Brief ignores the Opening Brief's relevant discussions of *Rodriguez* and contends that the "language and logic of *Rodriguez* shed no further light on our case." (Dkt. 30, at 43). The Answering Brief does not acknowledge that *Rodriguez* held that:

- "a review of cases addressing the question of whether such waivers are applicable in the context of recreational water activities indicates that such waivers are enforceable;"

- "Congress intended to ensure that essential transportation services were safe for passengers, which is 'much different than … requiring a signed

---

[20] The Answering Brief states that Appellants "seize on that ipse dixit as a means of buoying up their mistaken insistence that § 30509 applies only to common carriers," but "*Rodriguez* however neither holds, says, nor hints anything of the sort; it did "not reach the question of whether the statute applies only to common carriers." (Dkt. 30, at 43).

[21] The Opening Brief noted that *Rodriguez* "accepted the District Court's analysis regarding a single port" in dicta.

liability release to participate in [a] recreational and inherently risky activity' with no transportation purpose;"

- the "*Hambrook* court did not acknowledge the extensive case law indicating that releases for negligence are generally enforceable in admiralty courts"; and

- "[a]pplication of the Hawai'i statute ... would cause 'prejudice to the characteristic features of maritime law' and interfere 'with its proper harmony and uniformity in its international and interstate relations.'" *Rodriguez v. SeaBreeze Jetlev LLC*, 2022 WL 3639305, at *6 (N.D. Cal. June 23, 2022)

## VII. DISAGREEMENT WITH LONGSTANDING PERSUASIVE PRECEDENT DOES NOT CHANGE THE MAJORITY VIEW—THAT EXCULPATORY CLAUSES WAIVING NEGLIGENCE FOR RECREATIONAL MARITIME ACTIVITIES ARE ENFORCEABLE

Appellee argues that Appellants have only cited nonbinding cases to support their position that maritime law generally enforces exculpatory clauses, including for recreational maritime activities—two cases from the Eleventh Circuit and the Fourth Circuit; two decisions from the Florida State Court of Appeal; and 14 district court decisions. No one disputes that the Ninth Circuit and the Supreme

Court of the United States[22] ("**Supreme Court**") have not ruled on the applicability of § 30509 or § 183c to recreational maritime waivers. That is why Appellants brought this appeal. However, just because a court "may forge a different path than suggested by prior authorities that have considered the issue" does not mean that it should

While Appellee makes fun of Appellants' argument about the "clear majority" of cases finding exculpatory clauses enforceable in recreational marine activity cases, courts analyzing § 30509 or § 183c have recognized this as fact. In 2009, a district court in the United States District Court for the District of Nevada stated "***the clear majority holds that under federal admiralty law, owners of recreational vessels may, through written waivers, disclaim liability for their own negligence***." *Charnis v. Watersport Pro, LLC*, 2009 WL 2581699, at *4 (D. Nev. 2009) (emphasis added). And earlier this year, over a decade after *Charnis*, Rodriguez court cited *Charnis* for the proposition that "federal admiralty law 'sufficiently addresses the enforceability of liability waivers' and that the clear majority' of courts 'hold[ ] that under federal admiralty law, owners of recreational vessels may, through written waivers, disclaim liability for their own negligence.'"

---

[22] Because the Fourth Circuit and Eleventh Circuit agree that recreational vessel waivers are enforceable and there is no Circuit split, it is unlikely that the Supreme Court would have had the opportunity to rule on this issue.

*Rodriguez v. SeaBreeze Jetlev LLC*, 2022 WL 3639305, at *5–6 (N.D. Cal. June 23, 2022).

To counter Appellants' 19 cases, the Answering Brief makes the exaggerated claim that the "clear majority" of courts is "dwindling fast" when Appellee relies on no Circuit Court decisions, no State Court decisions, and three nonbinding decisions from the District of Hawai'i, two of which came from the same judge. If Appellants' arguments are so absurd, one would expect that the 19 other decisions would have adopted Appellee's perspective. But they have not.

## VIII. HAWAI'I'S RECREATIONAL ACTIVITY LIABILITY STATUTE CANNOT APPLY BECAUSE HRS 663-1.54 CONFLICTS WITH MARITIME LAW[23]

While state law can supplement maritime law, HRS § 663-1.54 cannot fill gaps if "the state law 'contravene[s] any acts of Congress, ... work[s] any prejudice to the characteristic features of the maritime law, [ ]or interfere[s] with its proper harmony and uniformity in its international and interstate relations.'" *In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007) (citation omitted). A review of HRS

---

[23] Appellants did not appeal the Order's denial of Appellee's motion to strike the Liability Waivers pursuant to Hawai`i's Recreational Activity Liability Statute, section 663-1.54 of the Hawai'i Revised Statutes ("**HRS**"), but Appellee and the amici curiae have raised HRS § 663-1.54 as an alternative basis to invalidate the waivers notwithstanding the District Court's Order. (Dkt. 30, at 68–69; Dkt. 33, at 32–33). Since the Order does not confirm whether the District Court would allow HRS § 663-1.54 to supplement maritime law, discussion regarding the inability to apply HRS § 663-1.54 to invalidate the Liability Waivers appears necessary.

§ 663-1.54 indicates that the Hawai`i law conflicts with two maritime principles: (1) that exculpatory clauses in maritime contracts waiving ordinary negligence are enforceable; and (2) that the doctrine of assumption of risk does not apply in maritime cases, which Appellee argued in his motion to strike (SER-128-129). Therefore, Hawai'i's Recreational Activity Liability Statute cannot apply to this case.

### A. Unlike Maritime Law, HRS § 663-1.54 Will Not Waive Liability for Ordinary Negligence

While Appellee disagrees with the well-established maritime rule that exculpatory clauses for recreational maritime activities are enforceable, Appellee cannot dispute its existence given the multiple cases cited above, *supra* § VII; indeed, the Answering Brief urges this Court to develop a different interpretation of § 30509. [*See* Dkt. 30, Page 40 of 80]

HRS § 663-1.54—unlike maritime law—prohibits a business that provides recreational activities from waiving liability for ordinary negligence. Haw. Rev. Stat. § 663-1.54(a)("***Any person who owns or operates a business providing recreational activities to the public… shall be liable for damages resulting from negligent acts*** or omissions of the person which cause injury.") (emphasis added). Thus, a clear conflict exists between Hawai`i law and maritime law.

Recognizing this conflict, the district court in *Rodriguez v. SeaBreeze Jetlev* rejected Appellee's counsel's request to apply HRS § 663-1.54 because the "[a]pplication of the Hawaiʻi statute … would cause 'prejudice to the characteristic features of maritime law and interfere 'with its proper harmony and uniformity in its international and interstate relations.' " *Rodriguez v. SeaBreeze Jetlev LLC*, 2022 WL 3639305, at *6 (N.D. Cal. June 23, 2022) (declining to apply HRS § 663-1.54 based on dicta in *Hambrook* case that "did not acknowledge the extensive case law indicating that releases for negligence are generally enforceable in admiralty courts"). *See also Witkowski*, 2020 WL 486876, at *3–4 (New York law blanketly prohibiting enforcement of waivers conflicted with "clearly stated rule in maritime jurisprudence in favor of allowing parties to enter into enforceable agreements to allocate the risks inherent in marine recreational activities … [and a] long-recognized national interest in the development of a uniform body of maritime law") (citing *Brozyna*, 2011 WL 4553100, at *5).

## B. Appellee Argued that Assumption of Risk Does Not Apply to a Maritime Case and Cannot Concurrently Rely on HRS 663-1.54, Which Permits Assumption of Risk

Under Hawaiʻi law, primary implied assumption of the risk is a valid defense in tort cases involving sports and recreational activities. *Yoneda v. Tom*, 110 Hawaiʻi 367, 374, 133 P.3d 796, 803 (2006) (adopting holding in *Foronda v. Hawaiʻi*

*International Boxing Club*, 96 Hawaiʻi 51, 25 P.3d 826 (App. 2001) that

"primary implied assumption of risk is *a discrete and complete defense* where the

defendant's conduct at issue is **an inherent risk** of *the sports activity*.") (emphasis

and italics in original). HRS § 663-1.54 codifies the primary implied assumption of

the risk doctrine for recreational activities.[24]

Although HRS § 663-1.54 leaves open the possibility that a recreational

operator can avoid liability if a participant signs a waiver releasing the operator

from liability for damages for inherent risks, Appellee relied on general maritime

law to strike Appellants' affirmative defense of assumption of the risk, which is a

valid defense under Hawaiʻi law as demonstrated by HRS § 663-1.54. (SER-128-

129; 1- ER-50.) Thus, even if Appellee disagrees that maritime law generally

enforces exculpatory clauses for recreational maritime activities, Appellee cannot

request application of HRS § 663-1.54(a) to bar the Liability Waivers when

HRS § 663-1.54 allows the assumption of the risk defense that Appellee asserts

does not apply in maritime cases.

---

[24] Haw. Rev. Stat. § 663-1.54(b) ("[O]wners and operators of recreational activities shall not be liable for damages for injuries to a patron resulting from inherent risks associated with the recreational activity if the patron participating in the recreational activity voluntarily signs a written release waiving the owner or operator's liability for damages for injuries resulting from the inherent risks…."); Haw. Rev. Stat. § 663-1.54(c)(3) ("As used in this section an 'inherent risk'…[d]oes not result from the ***negligence***, gross negligence, or wanton act or omission of the owner or operator.") (emphasis added).

## CONCLUSION

For the reasons in this Reply Brief and the Opening Brief, Appellants respectfully request that this Court vacate the Order of the District Court as to Appellants' second affirmative defense of waiver and release, which is the law of the case, and remand the case to the District Court with instructions consistent with this Court's opinion.

Date: December 1, 2022.

MacDONALD RUDY O'NEILL & YAMAUCHI, LLP

*s/* Matthew A. Hemme
RALPH J. O'NEILL
JAMIE C.S. MADRIAGA
MATTHEW A. HEMME

*Attorneys for Appellants*
LAHAINA DIVERS INC. and
CORY DAM

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s):** 22 – 16149

I am the attorney or self-represented party.

**This brief contains 6,189 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Matthew A. Hemme      **Date:** 12/1/2022
*(use "*s/[typed name]*" to sign electronically-filed documents)*

1